UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| RICHARD McKINNIE; | ) | CIV. 07-5082-KES |
| LYNN McKINNIE; | ) | |
| KEITH TIPTON; | ) | |
| VIVIAN TIPTON; and | ) | |
| PAUL F. TIPTON | ) | |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| ESTATE OF WALLACE ADRIAN; | ) | |
| WELLS FARGO BANK SOUTH | ) | |
| DAKOTA, N.A.; | ) | |
| TIMOTHY HUBER; | ) | |
| COLDWELL BANKER COMMERCIAL; | ) | |
| FAITH WENDT; | ) | |
| MICHAEL McMAHON, former Custer | ) | |
| County Director of Planning, in his | ) | |
| personal capacity; and | ) | |
| DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

On August 6, 2008, the court ordered supplemental briefing on the issue of the court's subject matter jurisdiction over plaintiffs' state-law claims. Plaintiffs Richard McKinnie, Lynn McKinnie, Keith Tipton, Vivian Tipton, and Paul F. Tipton; defendants Wells Fargo Bank South Dakota, N.A. and Timothy Huber ("Wells Fargo defendants"); defendants Coldwell Banker Lewis-Kirkeby-Hall Real Estate, Inc. and Faith Wendt ("Coldwell Banker defendants"); and defendant Michael McMahon filed initial briefs. The Coldwell Banker defendants and defendant McMahon filed responsive briefs. Plaintiffs did not

file a responsive brief.  Defendant Estate of Wallace Adrian has not appeared in this action.

## I.  Background

Plaintiffs' lengthy complaint sets out a long-standing dispute between neighboring landowners beginning as early as 1997.  Much of plaintiffs' complaint details the disagreement between the McKinnies and Adrian over who owned a parcel of land called Rainbow Hills Ranch.  This issue was resolved twice by the Supreme Court of South Dakota, which held that the McKinnies were the rightful owners of Rainbow Hills Ranch.

The portion of plaintiffs' complaint that is relevant to the claims in the present action asserts that Adrian, along with the Coldwell Banker and Wells Fargo defendants, engaged in civil conspiracy and interfered with the McKinnies' business relationship with Carolyn Robbins from 1999 through 2005.  The McKinnies and the Tiptons also assert that Adrian and McMahon interfered with their business relationships with unnamed prospective buyers of their lands, engaged in civil conspiracy with respect to such tortious interference, and violated § 1983 by violating plaintiffs' due process rights by imposing arbitrary conditions on the grant of building permits for plaintiffs' lands.

In support of their claim that Adrian, the Coldwell Banker defendants, and the Wells Fargo defendants tortiously interfered with a valid business relationship and engaged in civil conspiracy to do so, plaintiffs assert that in

1999, the McKinnies entered into negotiations with Robbins regarding the sale of the Rainbow Hills Ranch.  Shortly thereafter, Robbins obtained the assistance of realtor Faith Wendt of Coldwell Banker Lewis-Kirkeby-Hall Real Estate, Inc.  Wendt contacted Adrian, and later informed Robbins that the McKinnies did not own Rainbow Hills Ranch, that Adrian was the owner of the land, and that the McKinnies were behind on lease payments on the land. Around the same time, Adrian began discussing with Robbins the possibility of him selling Rainbow Hills Ranch to her.  He informed Robbins that he would not do business with her if she continued doing business with the McKinnies. With the assistance of Wendt, Robbins approached the Wells Fargo defendants to arrange financing for her purchase of Rainbow Hills Ranch.  Huber, acting as president of Wells Fargo, informed Robbins that Wells Fargo would not do business with her if she continued her negotiations with the McKinnies.

In May 2000, Robbins contacted Adrian regarding the status of the Rainbow Hills Ranch.  She indicated that she would reopen discussions to purchase the land after the question of ownership was resolved in state court. Robbins again spoke to Adrian about the status of the legal proceedings and title to the land in July 2000.  In October or November 2000, Robbins received from Wells Fargo verbal assurance of a loan to finance the purchase of Rainbow Hills Ranch.  Plaintiffs do not assert any details or contact with

Robbins after November 2000.  Robbins ultimately discontinued her efforts to buy Rainbow Hills Ranch in 2005.

The McKinnies and Tiptons also allege wrongdoing with respect to their attempts to sell parcels of their land to other, unnamed, prospective buyers. The facts behind these allegations began in 2006 and are limited to defendants Adrian and McMahon.  Plaintiffs argue that Adrian knew that they were attempting to sell parcels of their land and that he arranged a series of meetings with then-Custer County Planning Director Michael McMahon. Some time after these meetings, McMahon informed McKinnies and Tiptons that the granting of building permits for 40-acre or larger parcels of their land would be conditioned on the construction of publicly dedicated roads at their expense.  On March 7, 2007, the Custer County Board of Commissioners reversed McMahon's refusal to grant twelve building permits on property owned or formerly owned by the Tiptons.  On June 6, 2007, the Custer County Board of Commissioners voted to rescind its prior action with respect to ten of the building permits authorized at the March meeting.  Plaintiffs allege that McMahon violated their due process rights by imposing arbitrary conditions on the grant of building permits.

## II.   Discussion

"Federal courts are courts of limited jurisdiction."  Myers v. Richland County, 429 F.3d 740, 745 (8th Cir. 2005).  District courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The supplemental jurisdiction statute provides that in civil cases where the district courts have original jurisdiction, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Section 1367 codifies the principle that federal courts have jurisdiction over state-law claims that "derive from a common nucleus of operative fact" with a claim over which the district court has original jurisdiction such that the federal and state claims "would ordinarily be expected to [be tried] all in one judicial proceeding."  OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007).

The United States Court of Appeals for the Eighth Circuit has held that a 42 U.S.C. § 1983 claim brought against county jail officials for deliberate indifference to serious medical needs and state-law medical negligence and wrongful death claims brought against additional defendants did not form part of the same case or controversy under Article III.  Williams v. Kelso, 201 F.3d 1060, 1066 (8th Cir 2000).  Although the facts of the federal and state-

5

law claims were intertwined, "the two causes of action [were] independent and essentially separate." Id.  Therefore, the district court was correct in dismissing the state-law claims.  Id.

Where the federal and state-law claims derive from a common nucleus of operative fact such that they form part of the same case or controversy, the district court must exercise supplemental jurisdiction over the state-law claims unless one of the exceptions provided in § 1367 applies.  McLaurin v. F.C. Prater, Co-1, 30 F.3d 982, 984-85 (8th Cir. 1994).  In cases based on federal question jurisdiction, district courts have discretion to decline to exercise supplemental jurisdiction over a state-law claim if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In deciding whether to exercise supplemental jurisdiction over state-law claims, district courts should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997).

As provided in § 1367(c)(2), even if the state-law and federal-law claims derive from a common nucleus of operative fact such that they form part of the same case or controversy, the district court has discretion to decline to

exercise jurisdiction over the state-law claims if those claims substantially predominate over the federal-law claims.  28 U.S.C. § 1367(c)(2).  "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).  In other words, a state-law claim may be dismissed where it "appears that a state claim constitutes the real body of a case to which the federal claim is only an appendage."  Id. at 727.

In a case involving a dispute between a municipality and a landowner in an adjacent town over a curb cut to the landowner's property, the district court concluded that the state-law claims for equitable relief substantially predominated over the federal § 1983 claim.  TMTB I, LLC v. City of Manchester, Mo., No. 4:07CV1037 CDP, 2007 WL 3146562, at *2 (E.D. Mo. Oct. 25, 2007).  The court emphasized practical reasons to decline to exercise jurisdiction over the state-law claims, including that the dispute was essentially a local one between a landowner and a neighboring municipality over the right of the municipality to control the real estate within its borders. Id. at *3.  Moreover, although the plaintiff alleged that the municipality violated its federal due process and equal protection rights, it did not allege invidious discrimination based on race or another federally protected category

7

or retaliation for exercise of First Amendment or other federal constitutional rights.  Id.  In the absence of an allegation involving a specific federal right, the court found that the state-law claims substantially predominated over the federal claims in the simple land use dispute.  Id.

Here, plaintiffs bring several claims under South Dakota law and only one claim under federal law.  It is undisputed that the court has federal question jurisdiction over plaintiffs' claim against Adrian and McMahon under 42 U.S.C. § 1983.  Therefore, the court must determine whether the § 1983 claim and each state-law claim are so related that they form part of the same case or controversy under Article III.

### A.   Tortious Interference and Civil Conspiracy Claims against Adrian, Coldwell Banker Defendants, and Wells Fargo Defendants Arising out of Rainbow Hills Ranch Negotiations

The court finds that it does not have supplemental jurisdiction over the state-law claims against Adrian, the Coldwell Banker defendants, and the Wells Fargo defendants arising out of the attempted sale of Rainbow Hills Ranch.  These claims and the § 1983 claim against McMahon are not so related that they form part of the same case or controversy.  Moreover, even if jurisdiction were appropriate under § 1367(a), the court would decline to exercise jurisdiction under § 1367(c)(2) because the state-law claims substantially predominate over the federal due process claim.

The McKinnies' tortious interference with business relations and civil conspiracy claims against Adrian, the Coldwell Banker defendants, and the

8

Wells Fargo defendants arising out of the McKinnies' attempt to sell Rainbow Hills Ranch to Carolyn Robbins do not share a common nucleus of operative fact with the due process claim against McMahon.[1]  Based on the allegations in the complaint, it is clear that the Rainbow Hills Ranch negotiations were over in 2005 at the latest.  During that year, Robbins explicitly abandoned her attempt to purchase the land.  Defendant McMahon did not enter the picture until 2006.  At that time, plaintiffs were seeking to sell different parcels of land to different potential buyers than those that were at issue from 1999-2005.  The court does not find any common facts between the Rainbow Hills Ranch negotiations and the application for building permits in 2006-2007, except the common defendant, neighboring landowner Adrian.

Plaintiffs rely on the common defendant to assert that the relevant series of events was continuing.  This series of events, they argue, was "Adrian's repeated, and ongoing over a period of years, interference with Plaintiffs' property rights in connection with his efforts to subdivide and develop his own property and/or to gain direct control of Plaintiffs' properties."  Plaintiffs' Legal Brief on Subject Matter Jurisdiction (Docket 30),

---

[1] The analysis for the two state-law claims is identical because the civil conspiracy claim is derivative of the tortious interference claim.  A civil conspiracy claim is "sustainable only after an underlying tort claim has been established."  Setliff v. Stewart, 694 N.W.2d 859, 867 (S.D. 2005).  If the court cannot exercise supplemental jurisdiction over the tortious interference claim, it cannot exercise jurisdiction over the civil conspiracy claim either.

at 3.  This series of events, assert plaintiffs, all stemmed from "actions intended to accomplish a single goal, constitut[ing] the very essence of a common nucleus of operative fact."  Id.

The fact that one defendant allegedly acted over several years to advance a single goal does not mean that every tort allegedly committed by that defendant arose out of a common nucleus of operative fact.  "Not every dispute that arises between parties litigating a federal claim constitutes a part of the same Article III case."  Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Indus., Inc., 793 F. Supp. 120, 122 (D. Md. 1992).  Just because a state-law and federal-law claim are both part of an "ongoing, nasty dispute between the parties," does not mean that the claims form part of the same case or controversy.  See id.  The nearly decade-long dispute between Adrian and the McKinnies does not create a common nucleus of operative fact.

Moreover, the tortious interference and civil conspiracy claims arising out of the Rainbow Hills Ranch negotiations would not ordinarily be expected to be tried in the same case as a constitutional claim brought against a county official granting building permits only subject to conditions for unrelated parcels of land.  There are no common factual issues between the two claims because they involved different parties, a different time period, and different land.  No witnesses would be required to duplicate their testimony if the claims were tried in different proceedings.  The state-law tort claims and

10

the federal due process claim involve distinct questions of law.[2]  They are

independent and essentially separate, and not part of the same case or

controversy under Article III of the United States Constitution.  See Williams,

201 F.3d at 1066.  Therefore, the court does not have supplemental

jurisdiction over the tortious interference and civil conspiracy claims against

Adrian, the Coldwell Banker defendants, and the Wells Fargo defendants.

These claims must be dismissed.

     Alternatively, even if the tort claims relating to Rainbow Hills Ranch and

the due process claim arose out of a common nucleus of operative fact, the

court would decline to exercise supplemental jurisdiction over the state-law

-------------------------

     [2]The prima facie case of tortious interference with a business relationship
has the following five elements: (1) the existence of a valid business
relationship or expectancy; (2) knowledge by the interferor of the relationship
or expectancy; (3) an intentional and unjustified act of interference on the part
of the interferor; (4) the interference caused the harm sustained; and (5)
damages.  Hayes v. Northern Hills Gen. Hosp., 590 N.W.2d 243, 248 (S.D.
1999).  The tort of civil conspiracy has the following five elements: "(1) two or
more persons; (2) an object to be accomplished; (3) a meeting of the minds on
the object or course of action to be taken; (4) the commission of one or more
unlawful overt acts; and (5) damages as the proximate result of the
conspiracy."  Stewart, 694 N.W.2d at 866-67.

     In contrast, to prevail on a substantive due process claim in this case,
plaintiffs would have to establish (1) "a protected property interest to which the
Fourteenth Amendment's due process protection applies," and (2) that
McMahon's actions were truly irrational, i.e., "something more than . . .
arbitrary, capricious, or in violation of state law."  Bituminous Materials, Inc. v.
Rice County, Minn., 126 F.3d 1068, 1070 (8th Cir. 1997).

     None of the elements of the state-law torts and federal due process claim
overlap.  The causes of action require proof of different factual and legal issues.

claims because these issues predominate over the federal issue.  Where state-law issues predominate in terms of proof, the scope of the issues raised, or the comprehensiveness of the remedy sought, the state-law claims may properly be dismissed.  <u>Gibbs</u>, 383 U.S. at 726-27.

In this case, the state-law issues predominate in terms of proof and scope of issues.  As noted, none of the elements of the torts of tortious interference with a business expectancy and civil conspiracy to commit such interference overlap with the requirements for showing a violation of due process.  Further, the facts that would establish each element are distinct in terms of time, parcel of land, and individuals involved.  The state-law torts involve a variety of non-state actors who are not cognizable defendants in a constitutional claim.  Based on the nature of the claims and the facts supporting each claim, the state-law issues predominate.

Moreover, the structure of plaintiffs' complaint leaves the court with the impression that the state-law claims are the real body of the case to which the federal constitutional claim is merely an appendage.  As several of the defendants have rightfully pointed out, plaintiffs devoted about one hundred paragraphs of the factual section of their complaint to the negotiations, interactions, and disputes surrounding Rainbow Hills Ranch.  In contrast, plaintiffs spent only eight paragraphs discussing the events in 2006 and 2007 involving McMahon's decision to condition the issuance of building permits on the construction of a public road.  The fact that the bulk of plaintiffs'

12

complaint focuses on events that took place before the federal due process claim arose convinces the court that the state-law tort claims substantially predominate over the federal due process claim brought under § 1983.  For this reason, even if the tort claims relating to the Rainbow Hills Ranch negotiations arose out of a common nucleus of operative fact with the federal claim against Adrian and McMahon, the court would exercise its discretion to decline to accept subject matter jurisdiction over these claims. See 28 U.S.C. § 1367(c)(2).

### B.   Tortious Interference, Civil Conspiracy, and § 1983 Claims Arising out of Conditions on Building Permits

The court also declines to exercise supplemental jurisdiction over the tortious interference with a business relationship and civil conspiracy claims brought against Adrian and McMahon.  Although these claims and the due process claim brought under § 1983 arise out of a common nucleus of operative fact, the court finds that the state-law issues substantially predominate and the values of judicial economy, convenience, fairness, and comity favor dismissal of the state-law claims.

The McKinnies and Tiptons allege that Adrian and McMahon tortiously interfered with a business relationship or expectancy, engaged in civil conspiracy in relation to the tortious interference, and violated their due process rights.  The court has original jurisdiction over the due process claim, which was brought under 42 U.S.C. § 1983.  The § 1983 claim and the state-

13

law claims derive from a common nucleus of operative fact because the claims involve the same parcels of land, the same landowners, and the same alleged wrongdoers.  See City of Manchester, 2007 WL 3146562 at *2 (finding common nucleus of operative fact where all claims arose out of the same factual dispute over the curb cut to the plaintiff's land).  Plaintiffs allege that Adrian held a series of meetings with McMahon, after which McMahon informed plaintiffs that he would not grant building permits for their land unless they constructed a publicly dedicated road.  Plaintiffs argue that this series of events constituted tortious interference with a business relationship or expectancy with unnamed prospective buyers of their land, and that McMahon's decision deprived them of their due process rights.  Although the tort claims and due process claim have distinct elements, the same set of facts is relevant to both.  Therefore, all the claims against Adrian and McMahon arising out of the denial of building permits in 2007 derive from a common nucleus of operative fact such that they would ordinarily be expected to be tried all in one judicial proceeding.

Because the claims involving the conditioning of building permits form part of the same case or controversy under Article III, the court must exercise jurisdiction over the tortious interference and civil conspiracy claims unless one of the exceptions enumerated in § 1367 applies.  See McLaurin, 30 F.3d at 984-85.  The court finds that the state-law claims substantially predominate over the federal claim and accordingly declines to exercise

supplemental jurisdiction.  See § 1367(c)(2).  As with the state-law claims

arising out of the Rainbow Hills Ranch negotiations, the state-law claims

arising out of the conduct of Adrian and McMahon in 2006 and 2007

substantially predominate over the federal due process claim in terms of proof

and the scope of the issues raised.  Further, the principles of judicial economy

and comity counsel toward declining to exercise supplemental jurisdiction

over the tort claims against Adrian and McMahon.

The tortious interference and civil conspiracy claims against Adrian and

McMahon require far more in terms of proof than the due process claim

brought under § 1983.  As previously noted, the elements of tortious

interference with a business relationship and civil conspiracy to commit the

same are distinct from the elements of a violation of due process.  On their

tortious interference with a business relationship claim, plaintiffs would have

to show that the McKinnies and Tiptons had a valid business relationship or

expectancy with the potential buyers of their land, that Adrian and McMahon

knew about the relationship or expectancy, that Adrian and McMahon

intentionally and unjustifiably interfered with the relationship, and that the

interference caused the McKinnies and Tiptons to sell their land at reduced

prices.  See Hayes, 590 N.W.2d at 248.  To establish civil conspiracy, plaintiffs

would have to prove that Adrian and McMahon committed the tort of tortious

interference, worked together, had an object to be accomplished, had a

meeting of the minds on the object or course of action to be taken, and

proximately caused damages to plaintiffs.  See Stewart, 694 N.W.2d at 866-

87.  All of these elements are irrelevant to the due process claim, which

requires that plaintiffs had a protected property interest and that McMahon's

actions were beyond arbitrary, capricious, and in violation of state law.  See

Bituminous Materials, Inc., 126 F.3d at 1070.  The amount of proof required

to establish the state-law claims would overwhelm the simple questions of

whether plaintiffs had a protected property interest in the building permits

and whether McMahon acted truly irrationally in imposing a condition on the

grant of these permits.

     Similarly, the state-law claims arising out of the conditioning of building

permits substantially predominate over the federal due process claim in terms

of the scope of the issues raised.  In cases involving land use disputes with

local landowners and governments, the state-law issues often predominate

despite the aggrieved party's attempt to give its claims constitutional labels.

See Chesterfield Dev. Corp. v. City of Chesterfield, 963 F.2d 1102, 1104 (8th

Cir. 1992) ("It is not enough simply to give these state law claims

constitutional labels such as 'due process' or 'equal protection' in order to

raise a substantial federal question under section 1983.").

     As in City of Manchester, where the district court declined to exercise

supplemental jurisdiction over state-law claims in a dispute between a

municipality and a landowner over a curb cut onto the landowner's land, the

present case involves a local dispute between neighboring landowners and

16

between a landowner and a county zoning official.  See 2007 WL 3146562 at

*3.  Where the dispute is "simply one of land use," and plaintiffs have alleged

that local officials violated their federal due process rights without articulating

invidious discrimination based on race or another protected category or in

retaliation for exercise of First Amendment rights, the state-law issues

predominate.  Id.; see also Chesterfield Developmental Corp., 963 F.2d at

1104 ("[T]he conventional planning dispute—at least when not tainted with

fundamental procedural irregularity, racial animus, or the like—which takes

place within the framework of an admittedly valid state subdivision scheme is

a matter primarily of concern to the state and does not implicate the

Constitution.").  This case involves a long-standing dispute over land and a

challenge to a county zoning decision.  Plaintiffs do not allege discrimination

based on a protected category or retaliation for exercising their constitutional

rights.  The issues are local in nature, and the state-law claims substantially

predominate in terms of the scope of the issues raised.

Finally, the factors of judicial economy and comity articulated in City of

Chicago weigh against exercising supplemental jurisdiction over the state-law

claims.  See 522 U.S. at 173.  Adrian and the McKinnies have already litigated

twice in South Dakota state courts.  The issues arising out of the denial of

building permits for plaintiffs' lands involve a local official and local land use

decisions.  Further, Adrian and McMahon are alleged to have committed torts

developed under South Dakota law.  Because the state courts are in a much

17

better position to decide issues relating to local land use decisions, it would be more economical for the state-law claims to be resolved in state court. Because the tortious interference with a business expectancy and civil conspiracy claims substantially predominate over the § 1983 claim over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over these state-law claims.

## III.  Pending Motions

Pending before the court is the Wells Fargo defendants' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) (Docket 13).  Because all of the claims against the Wells Fargo defendants are dismissed, their motion to dismiss under Rule 12(b)(6) is moot.

Also pending before the court is plaintiffs' motion to amend complaint (Docket 22).  Plaintiff's amended complaint would add a state-law negligence claim against Adrian, the Wells Fargo defendants, and the Coldwell Banker defendants (Docket 23-2).  It would also add Wendt as a defendant to the tortious interference, civil conspiracy, and § 1983 claims arising out of the denial of building permits (Docket 23-2).  In light of the court's decision to dismiss all of the existing state-law claims, the motion to amend in its current form is denied without prejudice.  Plaintiffs may move to amend their § 1983 cause of action in their complaint to add Wendt as a defendant and the court will consider said motion on its merits.

Accordingly, it is hereby

18

ORDERED that Counts I and III of the complaint (Docket 1) are dismissed without prejudice.

IT IS FURTHER ORDERED that defendants Wells Fargo Bank South Dakota, N.A. and Timothy Huber's motion to dismiss complaint (Docket 13) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion to amend complaint (Docket 22) is denied.

Dated September 24, 2008.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE